UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

---------------------------------------------------x
In re:                                      :    Chapter 11
                                            :
Monroe Hospital, LLC,[1]                    :    Case No. 14-07417-11
                                            :
              Debtor.                       :    Honorable James M. Carr
---------------------------------------------------x

**DECLARATION OF JOSEPH ROCHE IN SUPPORT
OF CHAPTER 11 PETITION AND FIRST DAY PLEADINGS**

I, Joseph Roche, hereby make this statement under 28 U.S.C. § 1746 and state that:

1. I am the President and Chief Executive Office of Monroe Hospital, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case").

2. Although I only joined the Debtor in October of 2013, I am familiar with its operations and I have extensive experience in the healthcare industry. Prior to joining the Debtor, I served as the Regional President of St. Vincent Health, Indianapolis from 2008 to October of 2013. In that capacity I was responsible for four hospitals with revenue exceeding $500 million per year. Each of the hospitals were financially imperiled, and as a result I have experience with both turnaround management and chapter 11 bankruptcy cases. From 2000 to 2008 I was the CEO of St. Vincent Health, Indianapolis. From 1998 to 2000 I was the Executive Director for Ambulatory Services for St. Vincent Health, Birmingham, Alabama.

3. I have a Bachelor's degree from Wayne State University, a Masters of Social Work from the University of Michigan and a Master of Business Administration, with a specialization in Finance / Health Care Operations, from Oakland University.

4. On the date hereof (the "Petition Date"), the Debtor filed with this Court a

---

[1] The last four digits of the Debtor's taxpayer identification number are (9733).

1

voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as well as certain motions and other pleadings (the "First Day Pleadings"). I am authorized by the Debtor to submit this Declaration on their behalf in support of the First Day Pleadings.

5.  The First Day Pleadings are intended to enable the Debtor to operate effectively and efficiently during the Chapter 11 Case, as well as avoid certain adverse consequences that might otherwise result from the commencement of the Chapter 11 Case. Among other things, the First Day Pleadings seek relief aimed at sustaining the operations at the Hospital so that patients are not adversely impacted by the Chapter 11 Case and to maintaining the confidence of the Debtor's various stakeholders, vendors and employees to preserve value that would otherwise quickly erode. Gaining and retaining the support of these key constituencies is critical to the Debtors' efforts to stabilize their business operations and maximize value for the benefit of their creditors. I have reviewed the First Day Pleadings, and it is my belief that the relief sought therein is necessary to: (a) avoid immediate and irreparable harm to, and ensure the uninterrupted operation of the Hospital; and (b) maximize and preserve the value of the Debtor's bankruptcy estate. I am familiar with the Debtor's day-to-day operations, financial condition, business affairs and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge, (b) my review of relevant document, (c) information provided to me by other members of the Debtor's management team or professionals retained by the Debtor, or (d) my opinion based on experience and knowledge of the Debtor's operations and financial condition. If called upon, I could and would testify competently to the facts set forth herein.

A.  **General Background on the Debtor**

6. Since 2006, the Debtor has operated a 32 licensed bed private acute care medical surgical hospital located in Bloomington, Indiana (the "Hospital"). Through the Hospital, the Debtor offers critical medical and surgical care to the local community. Patients are individuals who seek medical attention for acute or chronic clinical conditions and are referred by their personal physicians or access care through the emergency department. The Hospital is licensed by the State of Indiana through December 2014. The Hospital is accredited by The Joint Commission, which accreditation expires July 20, 2016. As of the Petition Date, the Debtor employed approximately 315 employees to conduct its business operations.

7. The Debtor leases the land (the "Real Estate") on which the Hospital is located from MPT Bloomington, LLC ("MPT Bloomington") under the Lease Agreement dated March 7, 2007, as later modified and amended (the "Lease"). MPT Development Services, Inc. ("MPT Development", and together with MPT Bloomington, "MPT"), an affiliate of MPT Bloomington, acts as a lender to the Debtor under the Loan Agreement dated as of February 28, 2007, as later modified and amended (the "Loan Agreement"). The Debtor's obligations under the Lease and the Loan Agreement are currently in the amount of $121,752,898.30. To secure the Debtor's obligations under the Lease and the Loan Agreement, the Debtor granted MPT a security interest in substantially all of the Debtor's assets.

8. Prior to the Petition Date, the Debtor was suffering from an insufficient cash flow as a result of low patient census and high expenses. Although there are 32 beds at the Hospital, the average patient census is 8. This low patient census is a result of the fact that, the Debtor suffers from competition from other providers in the area. As a consequence of its low patient census, the Debtor received insufficient revenue to meet its prepetition expenses.

3

9. As a result of its insufficient revenue, the Debtor defaulted under the terms of both the Lease and the Loan Agreement. On September 2, 2009, the Debtor and MPT entered into a forbearance agreement (the "Forbearance Agreement") under which MPT agreed to forbear from exercising certain remedies available to it. As contemplated by the Forbearance Agreement, MPT Bloomington has terminated the Lease, leaving the Debtor as a holdover, month-to-month tenant at will. Subsequently, the Debtor, in coordination with MPT, began marketing itself in an attempt to negotiate a possible sale, merger or other transaction involving the Hospital.

10. On July 23, 2014, after conducting an extensive marketing process, MPT, the Debtor, Vibra Acute Care, LLC[2] and Prime Healthcare Services, Inc. ("Prime Services") entered into a Letter of Intent (the "LOI"). The LOI contemplates a sale of the assets and operations of the Debtor to an affiliate of Prime Services, Prime Healthcare Management, Inc. ("Prime Management", and together with Prime Services, "Prime"), and the Real Estate would be leased to Prime Management. The transaction would be consummated by this Chapter 11 Case and a sale conducted under section 363 of the Bankruptcy Code. By separate motions, the Debtor will seek entry of an order approving procedures for bidding on its assets and for selling its assets to Prime Management. The LOI also contemplates MPT Development providing the Debtor postpetition financing and MPT authorizing the Debtor to use its cash collateral, subject to certain conditions.

11. Contemporaneously upon entering into the LOI, the Debtor and Prime Management entered into a Management Services Agreement (the "Management Agreement") whereby Prime Management will provide certain management services to the Debtor.

---

[2] Vibra Acute Care, LLC ("Vibra") acted as the manager for the Hospital prior to September 1, 2012, it is the Debtor's largest equity security holder and it has the right to appoint up to four members to the Debtor's board of directors.

4

**B.      The Debtor's Secured Debt, MPT's Cash Collateral and the Postpetition Financing.**

12.     As set forth above, the Debtor's primary secured creditor is MPT. As of the Petition Date, the Debtor believes that MPT holds a claim in an amount not less than $121,752,898.30.which is secured by substantially all of the Debtor's assets. This claim is comprised of $53,38,724.97 on account of the Debtor's outstanding obligations under the Lease, $35,710,398.46 on account of the Debtor's unpaid balance under the under the Loan Agreement, and $32,661,774.87 on account of the Debtor's other outstanding obligations under the Lease and the Loan Agreement, including, but not limited to fees and interest. MPT's claim is secured by a blanket lien on all of the Debtor's assets (the "Prepetition Collateral"). Substantially all of the Debtor's cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtor in any account or accounts with MPT or the Debtor's banks, and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of MPT within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

13.     As of the Petition Date, the Debtor believes that (i) MPT's lien on the Prepetition Collateral is a valid, binding, perfected, enforceable first priority lien and is not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the amount of MPT's claim against the Debtor constitute legal, valid and binding obligations, enforceable in accordance with the terms of the Lease, Loan Agreement, and Forbearance Agreement (other than in respect of the automatic stay arising under section 362 of the Bankruptcy Code), and (iii) MPT's claim against the Debtor constitute allowable secured claims.

14.     In addition to MPT's secured claim, certain of the Debtor's trade creditors that

5

have sold or leased equipment to the Debtor and certain banks that have financed the Debtor's acquisition of that equipment (together, the "Secured Trade Creditors") hold claims against the Debtor that are secured by the equipment. Although the Secured Trade Creditors claims are secured by the equipment and the proceeds thereof, the Secured Trade Creditors claims are not secured by all of the Debtor's cash.

15. As described above, under the terms of the LOI, MPT has consented to the Debtor's use of MPT's Cash Collateral provided that MPT receive as adequate protection under sections 361, 362 and 363 of the Bankruptcy Code both replacement liens and an allowed claim under section 507(b) of the Bankruptcy Code. Further, MPT Development has agreed to provide postpetition financing to the Debtor (the "Postpetition Financing"). Specifically, as set forth in the Debtor-In-Possession Loan Agreement between the Debtor and MPT Development (the "Postpetition Financing Loan Agreement"), a copy of which is attached hereto as Exhibit A, MPT Development has agreed to provide additional credit under the Loan Agreement in an amount up to $5,000,000 during the pendency of the Chapter 11 Case. In exchange for the Postpetition Financing, MPT Development requires that MPT be granted a superpriority administrative expense claim under section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claim") and a lien on all of the Debtor's assets (the "Postpetition Financing Lien"). The Postpetition Financing Lien shall be subject to the priority of the prepetition liens held by MPT and the Secured Trade Creditors (the "Prepetition Liens"), however, the Postpetition Financing Lien shall have first-priority to any of the Debtor's unencumbered assets to the extent that the Debtor has unencumbered assets. Upon entry of an interim Financing Order MPT Development's Postpetition Financing Lien shall not cover any avoidance actions available to the Debtor under chapter 5 of the Bankruptcy Code (the "Avoidance Actions"), however, MPT

6

Development's Postpetition Financing Lien may cover the Avoidance Actions upon entry of a final Financing Order.

16.     In addition to the Debtor's secured debt, the Debtor estimates that its creditors hold general unsecured claims in excess of $13,000,000. The majority of these obligations are owed to suppliers and contract counterparties.

**C.     Facts Relevant to the First Day Pleadings**

17.     Concurrently with the filing of the Petition, the Debtor filed the First Day Pleadings, which request various forms of relief. Generally, the First Day Pleadings have been designed to meet the Debtor's goals of: (a) continuing the Hospital's operations in the Chapter 11 Case with as little disruption as possible; (b) maintaining the confidence and support of the Hospital's employees, patients, suppliers and vendors during the Debtor's reorganization process; (c) establishing procedures for the smooth and efficient administration of the Chapter 11 Case; (d) obtaining postpetition financing and (e) working toward a prompt sale of the Debtor's assets.

18.     I have reviewed and discussed with the Debtor's counsel each of the First Day Pleadings filed contemporaneously herewith (including the exhibits thereto and supporting memoranda) and incorporate by reference the factual statements set forth in the First Day Pleadings. It is my belief that the relief sought in each of the First Day Pleadings is tailored to meet the goals described above and, ultimately, will be critical to the Debtor's ability to achieve a successful going-concern sale of their assets.

19.     It is my further belief that, with respect to those First Day Pleadings requesting the approval of the Debtor's use of Cash Collateral and the Debtor obtaining Postpetition Financing from MPT Development (the "Postpetition Financing Motion"), the relief requested is

7

essential for the Debtor so that it may sustain the Hospital's operations. The Debtor has been unable to obtain the liquidity necessary to continue the Hospital's operations from any other source and the Debtor has been unable to obtain better terms from MPT. In fact, owing to the highly leveraged nature of the Debtor's business operations, it would have been virtually impossible to find any party other than MPT willing to provide financing to the Debtor.

20. In regard to authority to pay discrete prepetition claims or continue selected programs (*e.g.*, the First Day Pleadings seeking relief related to the Debtor's obligations to their employees), the relief requested is essential to the Debtor's reorganization and necessary to avoid immediate and irreparable harm to the Debtor's employees. Impairment of the Debtor's operations, or of their relationship with its employees – at the very time when the smooth operation of those operations and the dedication, confidence and cooperation of employees, patients and vendors is most critical – would clearly imperil the Debtor's chance to operate the Hospital and preserve the underlying value of the Debtor's bankruptcy estate. The Debtor operates in a highly competitive market for skilled healthcare professionals, and if employee obligations are not honored the Debtor could experience an exodus of critical employees that would force the Debtor to cease operations at the Hospital.

*[remainder of page intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 8, 2014

_____
Joseph Roche